UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 04-cv-01871-WYD

FERNANDO BOTELLO,

Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

Defendant.

---

**ORDER**

---

I. INTRODUCTION

THIS MATTER is before the Court on a review of the Commissioner's decision that denied Plaintiff's applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401-433. Plaintiff's application was filed April 17, 2001 (Transcript ["Tr."] at 79-81), and was initially denied on November 15, 2001. *Id*. at 34-38. Plaintiff then requested a hearing. *Id*. at 39-40.

On December 11, 2002, an administrative law judge ["ALJ"} vacated the hearing request and remanded the case to the state agency Disability Determination Services ["DDS"} for a revised determination based on possible mental impairments. Tr. at 58. On January 23, 2003, the DDS again denied Plaintiff's application. *Id*. at 63-66. A hearing was then held on September 9, 2003. *Id*. at 429-464. Administrative Law

Judge ["ALJ"] Jon L. Lawritson issued an unfavorable decision on October 29, 2003, finding that Plaintiff was not disabled. *Id.* at 13-28.

In the decision, the ALJ found at step one of the five-step sequential analysis required by law that the record showed Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. Tr. at 17. At step two, the ALJ found that Plaintiff had the following severe impairments prior to December 31, 1999, the date he last met the insured status requirements of Title II: hypertension, diabetes, chronic lumbar strain and degenerative disc disease involving the lumbar spine. *Id*. at 17.[1] Plaintiff's right knee impairment was found not to be a severe impairment. *Id*. at 18. The ALJ stated as to Plaintiff's depression and mental impairments that the record did not support a finding that Plaintiff had a medically determinable medical impairment prior to December 31, 1999. *Id*. at 18-19. At step three, the ALJ found that the Plaintiff's impairments, while severe, did not meet or equal the Listings. *Id*. at 19

The ALJ then proceeded to evaluate Plaintiff's residual functional capacity ["RFC"]. Tr. at 19-26. After discussing the medical evidence, the ALJ found that prior to December 31, 1999, Plaintiff retained the RFC to perform work requiring lifting 50 pounds occasionally and 25 pounds frequently with an option to sit or stand throughout the day at 20 minute intervals and only occasional stooping, squatting or bending. *Id*. at 26. The ALJ also found that Plaintiff's allegations were not entirely credible "to the

---

[1] As to the onset of disability, Plaintiff initially alleged he became disabled on January 1, 1994. Tr. at 79, 103. At the hearing, Plaintiff amended his disability onset date to September 1, 1999. *Id*. at 431-32.

extent he alleges total disability and a total inability to sustain work activity prior to December 31, 1999. . . ." *Id*. at 27; *see also* 25.

At step four of the evaluation, the ALJ addressed whether Plaintiff could perform his past relevant work as a tire repairer, automobile dealer, lubrication service worker, and automobile parts runner. Tr. at 26. The ALJ found, based on the vocational expert's ["VE"] testimony, that Plaintiff could not perform such work. *Id*.

The ALJ then proceeded to step five, where he considered Plaintiff's age (46 years old prior to December 31, 1999, defined as a "younger individual"), education (limited --6th grade), vocational experience (unskilled-semiskilled), RFC, and the testimony of a VE. Tr. at 26. The VE testified that a hypothetical person with Plaintiff's RFC and vocational profile would be able to perform light and medium unskilled work as an assembler of small parts (3000 medium jobs in Colorado and 125,000 nationally), an electrical worker (2000 light jobs in Colorado and 100,000 nationally), and a production assembler (1500 light jobs in Colorado and 100,000 nationally). *Id*. However, the VE found a 50% erosion of these jobs due to the sit/stand requirement. *Id*. at 462.

The ALJ found that the VE's testimony was credible and consistent with the record as a whole, and that there were a significant number of jobs in the national economy which Plaintiff was capable of performing on or before December 31, 1999. *Id*. at 27. He further found that to the extent the VE's testimony differed from the DOT description, Plaintiff presented no evidence to counter the VE's testimony about how these jobs were actually performed in the economy. *Id*. Accordingly, the ALJ accepted

the VE's opinions as an accurate description of the occupations Plaintiff could do. *Id*. Based on the VE's testimony, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act on or before December 31, 1999. *Id.* at 27-28.

The Appeals Council declined review of the ALJ's determination (Tr. at 8-11), making the case final for judicial review. This Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g).

## II. ANALYSIS

### A. Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

B. Whether the Commissioner's Decision is Supported by Substantial Evidence

1. The Findings of the Vocational Expert

I first address the vocational expert's findings. Plaintiff objects to these findings and the ALJ's reliance on same to find that Plaintiff is not disabled. I find that a remand is required because the ALJ improperly relied on the testimony of the VE to find that a significant number of jobs exist in the national economy that Plaintiff can perform. The VE testified that a person with Plaintiff's RFC and vocational profile could perform work which exists in significant numbers in the national economy, including the jobs of small parts assembler (Dictionary of Occupational Titles ["DOT"] 716.684-022), electrical worker (DOT 726.687-010) and a production assembler (DOT 786.687-010). Tr. at 26. The VE admitted, however, that there was a 50% erosion of the number of jobs due to the need to accommodate the option to sit or stand throughout the day at 20 minute intervals . *Id*. at 462.

The requirement that Plaintiff have the option to stand or sit throughout the day at 20 minute intervals is inconsistent with the descriptions of the above jobs in the Dictionary of Occupational Titles. The ALJ acknowledged this, stating that the VE's opinions did not directly correspond with the DOT. *Id*. at 27. The Tenth Circuit holds that "'before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point.'" *Smith v.*

*Barnhart*, ___ F.3d ___, 2006 WL 467958, at *3 (10th Cir. Feb. 28, 2006) (quoting *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999)). "A reasonable explanation may be that the VE considered other information not listed in the DOT." *Id*.

In this case, the ALJ states in his opinion that "the vocational expert testified that to the extent opinions do not correspond with the DOT, reliance was being placed on education, experience and observations of the jobs as actually performed in the economy." Tr. at 27. This is not supported by the record. *See id*. at 462-63. The VE did not testify as the ALJ stated in his opinion. In fact, the VE offered no testimony at all about the discrepancy between the job titles in the DOT and the jobs that he found Plaintiff could perform or any explanation as to same. Further, the ALJ did not attempt to elicit any such testimony. This requires that the case be remanded to the Commissioner.

The hearing transcript shows only that the ALJ asked in connection with the erosion of the job base what the VE's experience was with such jobs in Colorado. Tr. at 463. The VE stated that he had no experience with jobs in the state of Colorado, only with jobs in South Dakota and analyses that he performed in that area. *Id*. He did not state anything to the effect that his testimony about the erosion of jobs was based on his education. Further, the only experience or observations that he had were limited to jobs as performed in South Dakota, not in the national economy or in Colorado. It was speculation for the ALJ to assume that experience as to how jobs are performed in South Dakota would transfer to jobs in the national economy or in Colorado. This also requires a remand.

On remand, in addition to the errors noted above, the ALJ should address the fact that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." *See* SSR 83-12, 1983 WL 31253, at *4. Further, the ALJ should also consider Plaintiff's argument that he lives in a remote area of Colorado and that his prescription medications are not conducive to safe driving. The Tenth Circuit has indicated that in determining whether a significant number of jobs exist, the ALJ should consider "'a particular claimant's factual situation'", including "the distance claimant is capable of traveling to engage in the assigned work." *Triamar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (quotation omitted).

2. <u>Whether the ALJ Properly Weighed the Medical Evidence</u>

I next address the argument that the ALJ failed to properly consider and weigh the evidence regarding Plaintiff's impairments, both physical and mental, including the reports of Plaintiff's treating physicians. I find that the case must be remanded because (1) the ALJ failed to assess what weight he was giving to much of the medical evidence he discussed, and (2) I am unable to determine what evidence the ALJ relied on in formulating his RFC.

More specifically, while the ALJ discussed the medical evidence in some detail (Tr. at 20-26), he failed to assess what weight he was assessing as to the vast majority of the evidence. This was error. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("'an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and

the reason for that weight'") (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)). Further, while the ALJ's RFC assessment followed a discussion of the medical evidence, the ALJ did not state what specific medical evidence or report(s) he relied on in making such assessment. *Id*. at 26. Indeed, none of the medical evidence that the ALJ discussed allowed Plaintiff to lift 50 pounds occasionally. The closest evaluation discussed by the ALJ in the decision was that of Dr. Chan's, who found, according to the ALJ, that Plaintiff could lift only 40 pounds occasionally. *Id*. at 22.

From my review of the record, it appears that only one state agency physician, Dr. Ketelhohn, opined that Plaintiff could actually lift 50 pounds. *See* Tr. at 297-304. The ALJ did not discuss Dr. Ketelhohn's findings in the decision. I note that Dr. Ketelhohn's findings are significantly different from those of Dr. Moser, who examined Plaintiff for the Disability Determination Services ["DDS"] and found that Plaintiff could only lift 20 pounds occasionally. Tr. at 210. The findings are also significantly different than the findings of treating physician Dr. Lindell, who issued a retrospective opinion about the extent of Plaintiff's impairments. *See id.* at 342 (stating that he treated Plaintiff prior to December 31, 1999, for a back injury and that the work restrictions at that time "would be somewhat typical of a patient with chronic low back pain and having lifting restriction of not lifting over 20 pounds and other restrictions).[2]

"A treating physician's diagnosis of claimant's condition may be made after the relevant determination date and is entitled to significant weight if it is based on

---

[2] *See also* Tr. at 293-96 (October 2002 report of Dr. Ryan opining that Plaintiff could rarely lift 20 pounds and that he had significant limitations in walking, sitting, standing and the need to shift positions), 289-92 (October 2002 report of Dr. Lindell).

objective medical criteria." *Millner v. Schweiker*, 725 F.2d 243, 246 (4th Cir. 1984) (cited with approval in *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348 (10th Cir. 1990)).[3] I also note that while the ALJ appeared to adopt one of the restrictions found in the functional capacity evaluation of Larissa Coon (Tr. at 279), he did not adopt the other noted restriction of the need for frequent positional changes nor did he explain why he chose to adopt only one of the restrictions.

From the foregoing, I am left to speculate what evidence the ALJ actually relied on in formulating the RFC, and whether and why the ALJ chose to reject certain restrictions noted in the evidence while accepting others. This is also error that requires a remand of the case. *See Moon v. Barnhart*, 159 Fed. Appx. 20, 2005 WL 3446576, at *2-3 (remanding the case to the Commissioner where "the ALJ never specified what he believed the credible medical evidence to be, either for the purpose of rejecting the doctors' RFC assessments or for the purpose of supporting his own finding" and where the court was thus unable to determine what evidence the ALJ relied on in connection with the RFC).

On remand, when the ALJ is weighing the medical evidence, he should note that even if he decides not to give dispositive weight to the treating physicians' opinions, that does not allow him to reject the opinions outright. *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004). Instead, the treating physician's opinions are "'still

---

[3] While a retrospective diagnosis of a disease or condition, without evidence of actual disability, is insufficient for an award of benefits, *Potter*, 905 F.2d at 1348-49, Dr. Ryan had diagnosed Plaintiff's degenerative disc disease prior to December 31, 1999. *See* Tr. 196-98. Thus, the question the ALJ needed to examine was whether there was evidence of actual disability during the relevant time period. *Id*. I note on that issue that in September 1996, Dr. Ryan opined that Plaintiff was "clearly debilitated" and "clearly temporarily totally disabled". *Id*. at 198.

entitled to deference and [should be] weighed using all of the [relevant] factors.'" *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). The ALJ's opinion does not reflect that he gave the treating physicians' opinions deference or that he gave consideration to what lesser weight the opinions should be given. Further, he did not analyze the relevant factors set out in 42 U.S.C. § 404.1527.

I also note that while the ALJ was not required to give controlling weight to the physicians' reports about Plaintiff's inability to work, he was not entitled to reject those opinions outright. The ALJ was required to evaluate these opinions to the extent they have a bearing on the issue of disability. *Miller v. Barnhart*, No. 01-2231, 2002 WL 1608452, at *3 (10th Cir. 2002) ("[t]he adjudicator is required to evaluate all evidence in the case . . . including opinions from medical sources about issues reserved to the Commissioner"). Finally, I note as to Plaintiff's chiropractor that while he is not an acceptable medical source under the regulations, his opinions are still relevant "to show the severity of [Plaintiff's] impairment(s) and how it affects [Plaintiff's] ability to work." 20 C.F.R. § 404.1513(d). "A chiropractor's opinion may corroborate the findings of a treating physician . . . or show how an impairment affects a claimant's ability to work." *Garcia v. Callahan*, No. 96-2271, 1997 WL 616150, at *2 (10th Cir. 1997).

I also find that the ALJ must, on remand, properly analyze Plaintiff's pain and fatigue and other nonexertional factors, as well as the effect of his prescribed medications. The medical evidence cited by the ALJ demonstrates that Plaintiff experienced pain as a result of his back condition. *See* Tr. at 201-24. Based on this evidence, the ALJ found "that prior to December 31, 1999, the claimant suffered from a

chronic back impairment, which imposed some restriction on his functioning; however, the record does not support the claimant's contention that his pain and restrictions were of such severity, as to preclude all work activity and render him disabled." *Id*. at 25. He further stated, "[t]he undersigned recognizes that the claimant's impairments caused him some discomfort and pain; however, the law is clear that 'disability' requires more than the mere inability to work without pain." *Id*.

This is not, however, the end of the inquiry. *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994). First, even if the pain is not disabling in and of itself, the pain in combination with other impairments may render Plaintiff disabled. *Id*. at *4. The record does not show that the ALJ considered this fact. Second, "[t]he [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.'" *Id*. at *5 (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (emphasis in original); *see also Hargis v. Sullivan*, 945 F.2d 1482, 1490-01 (10th Cir. 1991). "A vocational expert is ordinarily required to determine what limitation . . . pain might impose on [a claimant's] ability to do . . . work." *Harrison*, 1994 WL 266742, at *5. On remand, the ALJ is thus directed to determine the number of jobs that Plaintiff can perform given the level of pain he suffers.[4]

---

[4] To the extent Plaintiff argues that the ALJ erred in not including mental impairments in the RFC. I find no error on this issue. I find no evidence of mental impairments in the record prior to December 31, 1999, the date Plaintiff's insured status expired. While Dr. Kallsen wrote that he believed Plaintiff had clinical depression in 1996 and the record indicates that Plaintiff told Dr. Lindell in 1998 that he took an over the counter antidepressant (Tr. at 328-29, 155), Plaintiff has cited to nothing in the record that supports a finding that the depression was disabling prior to the end of 1999 or that Plaintiff had any mental impairments during that time frame. Further, there is evidence in the record that such impairments did not exist and/or that medication alleviated this impairment. *See* Tr. at 305-318 (opinion

III. CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded for further fact finding consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g) to make further findings consistent with this Order.

Dated: March 20, 2006

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge

---

by Dr. Dyde that Plaintiff had no medically determinable mental impairments prior to December 1999); *see also* Tr. at 155 (Plaintiff reported that he felt "really good" as a result of taking the over the counter antidepressant). While there is evidence in the record to support a finding of mental impairments after December 31, 1999, including the report of Dr. Giebler (Tr. at 259-64), I agree with the Commissioner that this evidence is not relevant to the determination of whether Plaintiff was disabled prior to the time his insured status expired. *See Washington v. Shalala*, 37 F.3d 1437, 1440 n. 2 (10th Cir. 1994) ("to obtain disability insurance benefits, plaintiff had to establish that he became disabled on or before" the date he was last insured for disability benefits).